UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

   Plaintiff,

v.

              Case No. 23-cr-200-pp

DAMETRI HORTON,

   Defendant.

---

**ORDER OVERRULING DEFENDANT'S OBJECTIONS (DKT. NO. 33), ADOPTING JUDGE DRIES'S REPORT AND RECOMMENDATION (DKT. NO. 32) AND DENYING DEFENDANT'S MOTION TO DISMISS COUNT THREE (DKT. NO. 23)**

---

  On November 7, 2023, the grand jury returned an indictment charging the defendant with—among other things—being a prohibited person in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(8). Dkt. No. 12. The defendant filed a motion to dismiss the prohibited-person-in-possession charge, arguing that §922(g)(1) is unconstitutional both facially and as applied under the framework established in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). Magistrate Judge Stephen C. Dries recommended that this court deny the motion, dkt. no. 32, and the defendant filed a timely objection, dkt. no. 33, and the government filed a response, dkt. no. 34. The court will adopt the recommendation and deny the defendant's motion to dismiss.

**I. Legal Standard**

  Federal Rule of Criminal Procedure 59(b) governs a district court's referral to magistrate judges of motions to dismiss in criminal cases. Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation on a motion to dismiss. Fed. R. Crim. P. 59(b)(2). The

1

district judge must review *de novo* the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

## II.  Defendant's Motion to Dismiss Count Three (Dkt. No. 23)

 A. Defendant's Motion (Dkt. No. 23)

In his motion to dismiss, the defendant argued that his conduct was covered by the plain text of the Second Amendment, which guarantees "the individual right to possess and carry weapons." Dkt. No. 23 at 5 (citing D.C. v. Heller, 554 U.S. 570, 592 (2008)). The defendant asserted that given this constitutional protection, the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 9 (quoting Bruen, 597 U.S. at 24). The defendant maintained that the government could not meet this burden because there were no laws in the early American republic that prohibited non-violent ex-felons from possessing firearms. Id. at 10.

The defendant asserted that he was making an "as-applied" argument, but limited his discussion of that argument to a summary of his four prior convictions (burglary; felony marijuana possession; fleeing/eluding and second degree recklessly endangering safety; and felony theft). Id. at 2. The defendant contended that none of his prior convictions under the Wisconsin statutes included an element of force. Id. He urged the court to follow the reasoning employed by the Third Circuit Court of Appeals in Range v. Att'y Gen. United States of Am., 69 F.4th 96 (3d Cir. 2023) (*en banc*). Id. at 12.

2

Case 2:23-cr-00200-PP   Filed 07/24/24   Page 2 of 9   Document 35

B.  Government's Response (Dkt. No. 28)

The government responded that defense counsel had filed an almost identical motion in United States v. McCaa, No. 23-cr-8-pp (E.D. Wis.), with the only difference being the background factual information of each case. Dkt. No. 28 at 3. The government explained that in this case, the defendant was charged with an armed robbery that occurred at a Walgreens on November 20, 2022 in which the gunman approached the clerk with a firearm, demanded money and threatened to "shoot up" the store. Id. at 2-3 (citing Dkt. No. 1). A witness in the parking lot identified the defendant, said that she had given the defendant a ride from the Walgreens parking lot to Humbolt Park, and noticed the defendant had a gun. Id. On December 4, 2022, Milwaukee police officers pursued a stolen vehicle operated by the defendant for 9.76 miles. Id. After stopping the car, the defendant allegedly fled on foot and threw a Taurus model PT92 AF semi-automatic pistol bearing the serial number TFL58365D. Id. The firearm came back from the State of Wisconsin Regional Crime Lab with the defendant's DNA. Id.

The government argued that nearly every federal district and circuit court to have addressed the constitutionality of §922(g)(1) has concluded that the statute remains constitutional. Id. at 8. In addition to arguing that the plain text of the Second Amendment does not cover persons with felony convictions disarmed under §922(g)(1), the government argued that early Americans followed the tradition of England to regulate the ability of a person convicted of a felony to keep and bear arms. Id. at 14-25. Finally, the government argued that the defendant's as-applied challenge must fail because (1) there is no historical evidence to support the position that the constitutionality of §922(g)(1) turns on an individualized assessment, (2) there

3

is no historical evidence underpinning the assumption that "dangerousness" requires an element of force and (3) the application of such an approach would distort the separation of powers. Id. at 28-32

  C. Defendant's Reply (Dkt. No. 31)

The defendant conceded that Judge Dries and many other courts had ruled against other defendants advancing the same arguments he was advancing. Id. at 2. He wrote that he "understands and expects that the Court will recommend the motion be denied," and that "there have been no precedential rulings that would compel the Court to deviate from its prior rulings." Id. He argued, however, that the government must do more than identify a "relevantly similar" historical regulation and find a "distinctly similar" law to meet its burden. Id. at 3.

**II.  Judge Dries' Report and Recommendation (Dkt. No. 32)**

Judge Dries recounted that judges in this district have found §922(g)(1) to be constitutional and that he previously has recommended that both facial and as-applied challenges to the constitutionality of §922(g)(1) be denied. Dkt. No. 32 at 3. Acknowledging that the Seventh Circuit left some room for as-applied challenges, Judge Dries nonetheless ruled

> I remain convinced that the federal criminal prohibition on felons possessing firearms does not violate the Second Amendment as interpreted in *Heller* and *Bruen*. I continue to assume that convicted felons are included among "the people" entitled to Second Amendment protections. I also find that the plain text of [the] Second Amendment clearly covers [the defendant's] conduct—that is, simple possession of a handgun. However, the government has again satisfied its burden of demonstrating that § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation.

Id. at 4.

Judge Dries rejected the defendant's as-applied challenge. First, he concluded that the defendant had provided no historical evidence suggesting

4

Case 2:23-cr-00200-PP   Filed 07/24/24   Page 4 of 9   Document 35

that the constitutionality of §922(g)(1) turns on an individualized assessment of violence. Id. at 5. Second, he opined that the defendant's prior convictions were not for non-violent misdemeanors but were for felony offenses such as fleeing/eluding an officer and recklessly endangering safety. Id. Judge Dries commented that the defendant had provided no underlying facts regarding the convictions but observed that they appeared inherently dangerous. Id. Judge Dries emphasized that in this federal case, the defendant has been accused of discarding a loaded firearm while fleeing police on foot after a dangerous car chase. Id.

### III. Objection and Response (Dkt. Nos. 33, 34)

In a six-page objection, the defendant acknowledged that most district judges—including all of the judges in this district—have found §922(g) to be constitutional. Dkt. No. 33 at 1. The defendant stated that he did not believe that the undersigned had yet ruled on the issue—which, at that time, was correct—and asked the court to find that §922(g) violates the Second Amendment. Id. at 2.

According to the defendant, Judge Dries got a couple things right: that persons convicted of felony offenses are among "the people" entitled to protection under the Second Amendment, and that §922(g)(1) addresses a societal problem that has existed since the 18th century. Id. at 2. The defendant argued that the government carries the burden of pointing to a distinctly similar historical regulation rather than a relevantly similar historical regulation like those disarming people who were deemed dangerous. Id. at 2. The defendant took issue with the historical analogues Judge Dries identified, arguing that Judge Dries failed to consider the "how" and the "why" behind the regulations. Id. 4.

5

The government responded by asking the court to find that the defendant's "prior felony conviction places him outside of the Second Amendment," to adopt Judge Dries's conclusion "regarding *Bruen*'s second step" and to deny the defendant's motion to dismiss Count Three. Dkt. No. 34 at 4. The government maintains that the defendant continues to demand rigidity in historical analogues when Bruen cautioned that "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id. at 3 (quoting Bruen, 597 U.S. at 30).

**IV. Analysis**

The defendant timely filed his objections to Judge Dries's recommendation less than two weeks before this court decided United States v. McCaa, No. 23-cr-8-pp, 2024 WL 2991332 (E.D. Wis. June 14, 2024). In McCaa, as here, defense counsel (the same counsel as is representing the defendant in this case) characterized his prior criminal history as non-violent and argued that the government could not meet its burden under the framework articulated in Bruen, because (1) "[t]he historical record demonstrates that laws prohibiting non-violent felons from possessing arms did not appear until the 20th century" and (2) "[a]t the time that the Second Amendment was ratified, there were not any felon-in-possession laws on the book, nor were there any other firearms restrictions that were meaningfully similar to § 922(g)(1)." McCaa, Case No. 23-cr-8, Dkt. No. 88 at 6 (citing Dkt. No. 56 at 9-10); Dkt. No. 88 at 38 (citing Dkt. No. 69 at 38).

This court rejected McCaa's facial and as-applied challenges to §922(g)(1). Regarding the facial challenge, the court found that "the government . . . satisfied its burden to show that §922(g)(1) is facially constitutional

6

Case 2:23-cr-00200-PP   Filed 07/24/24   Page 6 of 9   Document 35

because it 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" McCaa, 2024 WL 2991332, at *19. Regarding the as-applied challenge, the court concluded that "[t]he defendant ha[d] not 'provide[d] [a] historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes," and that "[e]ven if he had, the defendant ha[d] not demonstrated that §922(g)(1) [was] unconstitutional as applied to him." Id. at *26 (citations omitted).

The court has since issued a second decision addressing virtually identical Second Amendment arguments. In United States v. Manns, Case No. 23-cr-8, 2024 WL 3356981, *2 (E.D. Wis. July 10, 2024), the court quoted the Seventh Circuit's April 4, 2024 decision in United States v. Gay, 98 F. 4th 843, 846 (7th Cir. 2024) in explaining why the defendant's §922(g)(1) arguments are difficult to reconcile with precedent:

> This argument is hard to square with *District of Columbia v. Heller*, 554 U.S 570 . . . (2008), which in the course of holding that the Second Amendment creates personal rights pointedly stated that "longstanding prohibitions on the possession of firearms by felons" are valid. *Id.* at 626 . . . . When extending *Heller* to the states, the Court in *McDonald v. Chicago*, 561 U.S. 742, 786 . . . (2010) (lead opinion), reassured readers that all of the reservations and provisos in the *Heller* opinion retain validity. And in the Court's most recent Second Amendment decision, *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 . . . (2022), Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did not change anything about *Heller*. *See* 597 U.S. at 72 . . . (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Or does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller or McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80-81 . . . (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing the statement in *Heller* about the propriety of denying firearms to felons).

Manns, 2024 WL 3356981, *2 (quoting Gay, 98 F.3d at 846). With respect to the as-applied challenge, the Gay court did not undertake an elements analysis for each of the defendant's prior convictions. Rather, the court recounted that the defendant had been convicted of twenty-two felonies, including aggravated battery of a peace officer and possessing a weapon while in prison, and that he had committed the instant offense while on parole and fleeing from officers. Gay, 98 F3d. at 847. Based on that history, the court summarily found that the defendant was "not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." Id. at 846-47.

The Seventh Circuit decided Gay two months before the defendant filed his objection to Judge Dries's recommendation. He acknowledge Gay in his objection, but attempted to distinguish it by stating that he "is not the defendant in *Gay*: he has a fraction of the convictions, less serious convictions, and he was not on supervision." Dkt. No. 33 at 5. He also argues that "the contours of navigating as-applied challenges in this context are unclear," but now asserts that "the as-applied versus facial framework seems to be insignificant in this new Second Amendment context," id., despite having told Judge Dries that the statute was "unconstitutional both facially and as applied" to him, dkt. no. 23 at 1.

The defendant's objection hit the docket before June 21, 2024, the date of the Supreme Court's decision in United States v. Rahimi, 144 S. Ct. 1889 (2024). The Rahimi Court addressed whether 18 U.S.C. §922(g)(8)—which prohibits the possession of firearms by persons subject to domestic violence restraining orders—infringed the Second Amendment. Rahimi, 144 S. Ct. at 1898. The Rahimi Court's discussion of the history of firearm regulations is instructive. "[T]he appropriate analysis involves considering whether the

challenged regulation is consistent with the principles that underpin [the Nation's] regulatory tradition." Id. Rather than the "distinctly similar" inquiry urged by the defendant in this case, the Rahimi decision demonstrated that the court's inquiry requires only consideration of "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" Id. (citing Bruen, 597 U.S. at 29).

Finally, in the past month, the Supreme Court vacated the judgment in the Third Circuit's *en banc* decision in Range—the case heavily relied upon by the defendant—and remanded the case for further proceedings based on Rahimi. Range, 69 F.4th 96, cert. granted, judgment vacated by Garland v. Range, No. 23-374, 2024 WL 3259661 (July 2, 2024)).

Based on this court's analysis in McCaa and Manns, the Seventh Circuit's reasoning in Gay and the Supreme Court's most recent discussion of historical regulations in Rahimi, the court will adopt Judge Dries's recommendation and deny the defendant's motion to dismiss.

The court **OVERRULES** the defendant's objection. Dkt. No. 33.

The court **ADOPTS** Judge Dries' recommendation. Dkt. No. 32.

The court **DENIES** the defendant's motion to dismiss Count Three. Dkt. No. 23.

The court will separately communicate with the parties regarding the next steps in the litigation.

Dated in Milwaukee, Wisconsin this 24th day of July, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**